TALLMAN, Circuit Judge,
dissenting in part:
I agree with the majority that strict scrutiny — not Seifert — is the appropriate standard. I agree that we should limit our decision to non-incumbent judicial candidates. And I agree that Rules 4.1(a)(5) (campaigning for others) and 4.1(a)(6) (personal solicitation) are unconstitutional as applied to those candidates. I concur in the majority opinion only on those points. I part company with my colleagues as to Rules 4.1(a)(2) (giving speeches on behalf of others), (3) (endorsing others), and (4) (soliciting money for others). These three rules are constitutional because they are narrowly tailored to serve the state’s compelling interest in maintaining judicial impartiality and its appearance' — the hallmark of government’s third branch.
My colleagues acknowledge that these three rules “present the closest question,” and that the Eighth Circuit upheld similar ones. Wersal, 674 F.3d at 1024-25. *1168 Nonetheless, the majority concludes that they are not narrowly tailored for two reasons: timing and recusal. The timing argument is that the rules are underinclusive because “they only address speech that occurs beginning the day after a non judge candidate has filed his intention to run for judicial office.” The recusal argument is that the rules are more restrictive than recusal, i.e., requiring judges who have campaigned for others to recuse themselves when those others show up as litigants. I dissent because I do not find these reasons persuasive.
The majority’s timing argument is clever but impractical. Its breadth alone suggests this. The argument would cut down any restriction (a) that is subject to strict scrutiny and (b) that starts to apply to people only after some triggering event. If the restriction’s enactment counts as a triggering event, and I don’t see why it wouldn’t, then strict scrutiny would always be fatal. That cannot be the law.
Moreover, the argument doesn’t actually answer the question, which is whether there are less restrictive ways to preserve judicial impartiality and its appearance. Having no rules is, of course, less restrictive. But it isn’t an alternative means of furthering the interest at stake here. Any actual alternative will suffer from the timing problem the majority identifies. So the timing argument tells us nothing about which alternative is the least restrictive; it only identifies a problem that all conceivable alternatives share.
The majority’s recusal argument, like the timing argument, is too impractical in my view. ' In Arizona, only very small counties elect judges. And some small counties may well have only one superior court judge. If that one judge campaigns for someone who is then elected sheriff or district attorney, an outside judge would be necessary in every criminal case and in all civil cases involving the county where the district attorney is its lawyer. Constant recusal is no solution.
That’s what the Eighth Circuit held in Wersal, after it considered this obvious problem. 674 F.3d at 1027-28. The majority, on the other hand, recognizes the problem, but then sidesteps it, claiming that the state failed to raise it and that dealing with it would require us to speculate. I disagree. There’s no need to speculate about something so self-evident. And it’s hard to fault the state for failing to dwell on the obvious.
In sum, I don’t buy the timing or recusal arguments. And without them, there’s nothing that prevents us from declaring that these three rules are the least restrictive means at Arizona’s disposal for furthering their compelling interest in maintaining judicial impartiality and its appearance. Simply affixing the label of strict scrutiny and then declaring that unspecified less restrictive means are required gives no guidance as to what rules pass constitutional muster. And it encourages an elective free-for-all that undermines respect for the third branch of government. Because my colleagues disagree, I respectfully dissent.